Good morning. May it please the Court, my name is John Miller, and I represent the appellants in this case, Dan Swanson, Christopher Hasse, Francis Ponza, Matt Buchanan, and William Lackin. I'd like to start my argument today talking a little bit more about the recent Wait a minute. I'm confused. You represent the police officers? I do. I do. I'd like to start my argument today talking a little bit more about the recent because I think it's important to distinguish it from how it's been couched to the court by the appellate. All Pierson v. Callahan did recently was resolve the order battle that has been raging ever since Saucier v. Katz was first decided. As the Court knows, Saucier v. Katz set forth a two-step approach, one, first having the Court determine the constitutional violation, and then only if a constitutional violation has occurred, determining if it would be free to go either way, say, we don't have to decide first whether a constitutional violation exists. Exactly, Your Honor. I think it's important to It's pretty easy, isn't it? It's very simple, and I think the underlying principle is important to why we're on appeal here in this case, because the Court recognized that district courts were having problems resolving typical constitutional questions. Well, I think what they decided was it was contrary to the doctrine of constitutional avoidance in Ashwander. Exactly, Your Honor. Let me ask you about this for the police. Could you just give us a list of, well, could you first address whether what the police did to Miller falls within the pigeonhole for Terry stops or whether it falls within the pigeonhole for arrests? Your Honor, it falls within the pigeonhole for Terry stops, and here's why. Because the detention was only 25 minutes. It was brief in nature. It followed a series of facts that gave the officers reasonable suspicion. And I think there's a couple that are important to really note, because it separates this case out from some of the other cases that have been cited by the court. Remind me which case says that the handcuffing doesn't turn into an arrest. It is, Your Honor. It's the Galagos v. City of Los Angeles case, 308-503-987. And that says that the use of guns and handcuffs do not result in an arrest, where the officers had a reasonable suspicion to detain. I'm having really a lot of trouble with the first step, which is how the police had anything close to a reasonable suspicion before they even put the handcuffs on.  close to a reasonable suspicion before they even put the handcuffs on.  close to a reasonable suspicion before they even put Mr. Miller into handcuffs, and why it wasn't, as a brief, the case, just racial characteristics, that he was male, that he was black, and there wasn't much else. I think, and the case cited for that point is probably the Washington v. Lambert case. I think it's very important to distinguish that case here today. If we walk away with one item in mind, I think it's the distinction between this case and that case. What was that case again that you wanted to distinguish? The Washington v. Lambert case. It's the very same case that the district court correctly did distinguish when it ruled on the motion of summary judgment. It held that that case did not apply to these facts here, and it was not analogous and here's why. Because in that case, the police officers were detaining suspects that they saw at a restaurant for a crime that happened several counties away and six days after the fact. And what the court set forth was four factors that they should analyze to decide whether or not there is reasonable suspicion to detain. And in Washington v. Lambert, they found that none of them existed. And I'm going to reiterate those four factors. One, whether the suspects were uncooperative at the time of the detention. Two, whether the suspects were believed to be armed. Three, whether the stop closely followed the crime. And four, whether the police had information to believe that a violent crime occurred. And the court disposed of each one of those in Washington v. Lambert and said none of them applied. But said importantly, however, if some combination of those four factors did occur, there would be reasonable suspicion to detain under Terry. We have at least two of those factors here. Number one, there was a reasonable suspicion that the suspects were armed. This was a robbery that didn't happen six days prior like it did in Washington v. Lambert. It happened within two hours of the time that Miller was detained. I'm having trouble going from somebody sees the suspect with a loose afro who runs off into the night from we're at a Holiday Inn or whatever it was, Motel 6, looking into somebody's hotel room and there's two men and a woman. I'm having trouble making that connection. Let me see if I can help. And the person that they're suspicious of does not have a loose afro, has short hair and a mustache, which was reported. I think that we could go back to the Ninth Circuit's decision in the United States v. Pinion, which held that slight variations in the general description are not fatal to a finding of reasonable suspicion. I think that's very important here in this case because that is the only characteristic that is of difference here in this case, and yet there are a wealth of other factors that match the exact description of the suspect that they were looking for. I see the slight variation, but I don't see the exact description. So maybe you could tell me what were the other than the fact that he was male and they were both African American. I think location is something very important to hone in on because, again, that's what Washington v. Lambert said. Look, you have somebody that's several counties away from where the crime occurred. Here we have a suspect that's a football field away from where the crime occurred. But he's sitting in a motel room. No, I understand. But the officers, you know, before getting to the motel room, the officers did investigate another Holiday Inn within 100 yards and a restaurant. So they were trying to look in the general vicinity to see if the person that committed the robbery was still present because it was still close proximity to the time when it occurred. I'm trying to remember. Was it 2.30 in the morning or 2.30 in the afternoon? It was in the evening, Your Honor. What time was it? I'm sorry. It was 6 to 12 maybe? First reported to the police at 12.35 a.m. in the morning. When did the police notice the open door at the Motel 6 and go in and start talking to Miller? It was 2.30 in the morning. 2.30 a.m. And that's undisputed. And that's one area where the district court did err. They thought it was between 20 and 40 minutes to detention. But when they resolved the undisputed facts, they did find that Miller checked out at 3 o'clock and the detention started at 2.30. 2.30 a.m. Right. So there were three out? I'm sorry. And when was the robbery at the restaurant 100 yards away? It was approximately 11.35 p.m. 11.35 p.m. armed robbery. Was it an armed robbery? It was, Your Honor. It was an armed robbery where the robber forced the manager and an employee back into the El Cerrito restaurant. And then once another employee was leaving by bicycle, they fled on foot. And here's another important point, is that the district court said that it could be that by applying the facts here, that it would have allowed officers to stop any African-American male anywhere in the vicinity of the crime afterwards. That's not the case, because this particular hotel was also northbound. It was the exact direction that they saw the robber flee at the time that they made their decision. So at that point, Mr. Miller, let me invite your attention to the procedural position in which we find ourselves. This was a motion for summary judgment for qualified immunity. On a motion for summary judgment for qualified immunity, we take the facts most favorable, not to the policeman, but to the arrestee, Mr. Miller, in this case. If there's a conflict of fact which is material, we must deny qualified immunity. You've been telling us about all the objective reasons why there was reasonable suspicion as to Mr. Miller and his friend who had a prior felony in the Motel 6, right? But I have trouble on the issue of summary judgment, because if the question is whether they had reasonable suspicion or whether Swanson had a racial motivation to arrest Miller, and there is evidence of the latter which conflicts with all the reasonable suspicion evidence which you've been telling us about, then I seem to have a conflict in the evidence, a tribal issue of fact. So my question is this. Is the subjective racial animus, if there is any, of Officer Swanson offset for purposes of summary judgment by the objective evidence of objective reasonable suspicion? So do we just get rid of anything that would indicate that Officer Swanson had a racial animus at the time of the arrest? First, Judge Beyer, I don't believe that there is sufficient evidence in the record. Let me then point you to the undisputed statement of facts, question 26, where Miller asked what was going on and replied, two black people robbed somebody in the area, and you guys are the only two black people in the area. I need to search you for weapons, period, right? Undisputed by you, if that is circumstantial evidence, pretty good circumstantial evidence, of a racial desiderata for arrest, doesn't that create an issue, a tribal issue of fact by itself, and you lose? I don't think so, Judge Breyer. Tell me why. And I'll tell you why, because I think that what that does is take one isolated fact, that Mr. Miller was African American, and put it in one context without considering all the other factors that would have supported a reasonable suspicion. But not only that he was African American, that you guys are the only two black people in the area, this is an hour and a half or two hours after the crime, and Simi Valley has been canvassed for the presence of blacks, and there are no other black men in Simi Valley? Do you want me to believe that? Judge Beyer, coupled with the other facts that supported the detention, I do. No, no, no, no, no, don't couple with the other facts. Mike, I'm trying to get you to tell me whether the subjective animus declared in this statement can create a tribal issue of fact as to all the objective reasons why there was reasonable suspicion. No, I don't believe it can. You don't believe it can. Do you have a case which tells me that? I do. It's the Supreme Court's decision in the United States versus ARVIZU, it's 534 U.S. 266, and that says that the divide and conquer approach by only isolating one issue with respect to the officers and their statements cannot be used to question reasonable suspicion. Reasonable suspicion must be identifying all the undisputed facts in total to decide whether or not the officers had reasonable suspicion to detain Officer Miller at the time they acted. And what we're seeing here by Apelli is exactly that parsed out approach. And here's the main point, and this is why we're here in appeal. The district court went through all of these facts, undisputed and disputed, and did 90 percent of the work. They got to the very end, but they didn't say, yes, there is a constitutional violation, no, there is not a constitutional violation, yes, there should be qualified immunity, or no, there shouldn't. They just said let it pass the trial. I think under the light of all the other Ninth Circuit decisions dealing with qualified immunity in these issues, that's not the right approach. Only three of the decisions that are cited by Apelli in their brief come after the Saussure v. Katz analysis. And it's really important for the Court to revisit why those three instances allowed the issue to go to trial. It starts with the Santos case. And in the Santos case, Saussure v. Katz was never briefed for the Court. It was never presented. And then just to a sponsor, the Court asked the counsel to address an oral argument, which clearly by the rationale they were not prepared to do. Sotomayor, Saussure is dead because of Fearsome. The Court, nobody has to decide whether there was a constitutional violation. You're right, Your Honor, but they still have to decide whether the constitutional violation, if one occurred, let me take a step back. The Court still must resolve qualified immunity. The Court, as a matter of law, must still resolve qualified immunity when the undisputed facts in the case show that the constitutional violation, if any existed, was not clearly established at the time the officers acted. But you're not saying that it's not clearly established that police can't stop someone where there's no reasonable suspicion. I mean, that's clearly established, correct? No, Your Honor, not in these circumstances. Not for a period of detention of 20 to 25 minutes where they're following an armed robbery. The only case that's even close is the one that's cited by the Apelli, which is the Washington v. Lambert case, which says that you, that the only clear right established is that you can't stop somebody that's six counties away, six days after the fact, and without any other articulable facts other than the fact that they're African American and male. But the other cases, such as the Galagos case, says that, that refutes that. It says that in Galagos, it should be noted that that detention was for one hour. And the Court said why it was unfortunate that an innocent man, the Ninth Circuit said that why it was unfortunate that an innocent man was detained for one hour, the detention worked just as it should. It was a dangerous situation. The detention stopped the gentleman, confirmed that he was or was not involved in it, and released him, and ruled that the officers were enticed. But yet they thought he was arrested in exactly the same clothes as reported across the street from where the incident was arrested. So they're not actually comparable sorts of cases. I think it's more comparable, though, than Washington v. Lambert. And the thing is, that's, in the underlying district court case, they reject Washington v. Lambert as being analogous. But then don't get to the fundamental issue, then. Assuming that the only case that shows you that there was a constitutional right clearly established is not applicable, then we should be entitled to qualified immunity. And there was no other case decided by the district court or by the appellee at the time that said that they should not be out. In other words, there's no other apples-to-apples cases that have been decided by the appellee either now before the Court or at the time of the district court's holding that said that the right was clearly established. And that's the whole point, is that the district court should have resolved that issue and determined that. And that is still what the test is even after, so I'll say even after, Pearson v. Callahan. Your position is that no reasonable officer could think that detaining a person without reasonable suspicion for 25 minutes and putting him in handcuffs violates his constitutional right? Not with the other facts that were known to the officer at the time he acted, Your Honor. It all comes down to taking the facts most favorably to Miller and deciding if there's reasonable suspicion on those facts. Is that right? I agree, Your Honor. That's true. But they're undisputed facts. That's the key. The Court should have resolved those. Well, if they're disputed, they don't have to be undisputed. They can be disputed, but you still have to take them most favorably to Miller, don't you? That's right. Exactly, Your Honor. Even the disputed facts should have been taken most favorably to Miller, and a decision should have been made one way or the other. There is a constitutional violation. There's not a constitutional violation. There is qualified immunity. There's not. And because qualified immunity is the right not to stand trial. The way the issues come down in this case, taking all the facts most favorably to Miller, was there reasonable suspicion? There was reasonable suspicion. Would that decide the case? I'm sorry? Would that decide the case, Your Honor? Okay. Thank you. Thank you. Thank you, Your Honors. Good morning. Dan Lotten, appearing on behalf of the Respondent. Mr. Miller. Counsel, I have some problems I want you to clear up for me. Yes, Your Honor. Armed robbery at the restaurant, cops looking around for the robbers. They see in a place, in a motel with a bad reputation, a door open. I'm sorry, Your Honor. My clock is at 14 minutes. I understood there was to be 20 minutes. I don't know if I'm making a mistake. Nope. Wrong. You are 15 minutes presiding. Farewell, Your Honor. Where was I? It looks to me as though the reasonable suspicion is armed robbery, perpetrated by black guys or a black guy, and there aren't that many black guys around, male and black. And here they are, motel with a bad reputation, 100 yards away, really short time since the robbery. These guys are up really late at night when most of us are asleep. The grassy berm between the restaurant parking lot that got robbed and the motel, looks like somebody ran over it, and Miller has grass in the treads of his shoes. I don't understand why it isn't reasonable suspicion. It doesn't have to be probable cause. It just has to be reasonable suspicion. Why isn't it? Because, Your Honor, as Judge Phillips ruled in her ruling, reasonable minds can disagree, but why wouldn't it be? I don't think we defer to a ruling, do we? Doesn't our standard of review require us to decide ourselves? It is de novo, Your Honor. Okay. So I don't care what position she took because I'm not allowed to defer to it. Just tell me why that isn't suspicious. I'll tell Your Honor what Judge or what Officer Hasse knew, and I will also allude to Judge Acuda's question earlier. Officer Hasse knew he was looking for somebody who was 6'2", 175 pounds. I know the description's wrong. The description is wrong. Frankly, I couldn't describe my own tie right now. I don't remember which one I put on. Very well, Your Honor. I'd have to look down. Descriptions are often wrong, and the cases say that. Part of the answer to your question lies in, would a reasonable officer think that a robber, after two and three-quarter hours had passed since committing the armed robbery, would sit in a motel room with the door open and the lights on, 100 yards away from the site of the robbery, so that he could be seen from the street by passing police officers? But let's assume that in that position, you would at least view there as being reasonable suspicion to approach the room and accost the men inside. I would do it if I was that officer. I would approach the room and accost the men. But then the next question is, what is the appropriate response? Is it to seize the man that does not answer the description, as the officers have admitted he did not answer the description, throw him face-first into a wall, handcuff him, leave him that way for 45 minutes to an hour, search all of his possessions? Is that the reasonable thing to do? Is that something for which he could be seen? There you're not talking at all about whether there's reasonable suspicion. You're talking about whether the scope of the stop went beyond what was permissible. Whether a Terry stop became ripened into a de facto arrest. So what you're saying is there is reasonable suspicion, but there is improbable cause, and the nature of the stop was such as to convert it into an arrest. Have I got the argument right? No, Your Honor. I don't concede that there was reasonable suspicion. Judge Phillips found that reasonable suspicion. Okay. Then tell me why there wasn't. Because, as the officers admitted, and as Officer Hassey wrote in his own report, these men did not answer the description. The only thing they had in common was they were male, black, and in the neighborhood, and we know in this circuit that being male, black, and in the neighborhood is not enough to supply reasonable suspicion. Actually, the Supreme Court told us in one of the cases they reversed us on. It might have been Montero Camargo, but I can't remember for sure, that the officers can take race into account, among other factors, in deciding whether there's reasonable suspicion. I think that one was for Border Patrol. They said the Hispanic appearance could be taken into account when they reversed us. But that decision did not overrule Torres or Lopez, both of which are, one of which is a decision of the Supreme Court, in which it was held that the mere resemblance to a general description is not enough. It wasn't mere, though. The thing about it is, for one thing, I'm not sure it's just racism, just harass the blacks who happen to be in the wrong county. My guess is that if they see a white college student in a black neighborhood, the police are equally suspicious. But I don't know. But it's not mere. They've also got the hour when most nice people are asleep in bed, and they've got the proximity, 100 yards, and they've got the grass, and they've got the, oh, I forget there were two other things. Oh, the proximity in time. It's not very long after the robbery. So it's not mere. It's not just round up the usual suspects, let's find some blacks. Well, then what was it? Just what I said. There was nothing to tie Bernard Miller to this crime, and every piece of information that they learned from the moment they approached Room 124 further disproved that he had anything to do with it. He did not answer the description. He did not have a chrome or silver handgun. He had an explanation for where he'd been. He offered receipts, a gas receipt and a hotel receipt. They blew that off. They completely ignored that. They weren't interested. There was nothing to tie him to this crime except being male, black, and in the neighborhood. Grass in his shoes. I'm sure I've got grass in the bottom of my tennis shoes and running shoes. You know, if you walked on the grass out here in front of this courthouse, you might have grass in your shoes. I don't know if you're allowed to walk on grass. You know, that's a crime that's something we don't need to go into. But, Your Honor. No kidding. I don't know if everybody has grass in their shoes. But if you run across a wet, grassy berm, you will. My client is someone who is a runner, as he told the officers, and if you run and if you run on grass, you're going to have grass in your shoes. Why does that necessarily? They don't have to believe everything that somebody they stop tells them. Your Honor, the totality of the circumstances is something that the courts direct us to when we are analyzing whether a Terry stop has turned into an arrest. Was the suspect giving evasive answers? Was he resisting? Was he being furtive? Or was he being compliant? Was he cooperating? Was he answering all the questions? Was he doing everything that he was told to do? The answers to all those questions are yes. They were looking for somebody, as Judge Bea pointed out, two black guys robbed a restaurant in the neighborhood, which was a lie. There was no information that two black guys had robbed anything in the neighborhood. It was one. And you two black guys are in the area, so we're going to search you for weapons. Nothing about answering the description. You are the only two black people in the area. I asked the officers at their depositions. That's what Officer Swanson said. Yes. On that issue, do you see the subjective statement of Officer Swanson creating a tribal issue of fact as to whether there was reasonable suspicion? By itself. Race is not enough. And we know that from the Torres case, and we know that from the Lopez case. The real difficulty for the appellants in this case, Your Honors, as Judge Bea has pointed out, and, Your Honor, Judge Kleinfeld, as you pointed out in your dissent in the Devereux case, is when foundational facts regarding a claim of qualified immunity are in dispute, these facts must be decided by the jury. This goes to the jury. And I know that there are lawyers in this State who think that a jury should never hear a claim of qualified immunity. Well, juries can and do hear the qualified immunity issue all the time, and they're perfectly capable of deciding it, whereas here the facts are disputed. Which all the disputed facts should be taken favorably to Miller. Yes, Your Honor. And doing that, taking all the facts favorably to Miller, whether they're conceded by the police or disputed by the police, what is there for the jury? When did the officers learn that Mr. Miller was armed with a loaded handgun? Now, the defense has been offered, although not by Officer Swanson, that, well, this takedown of Mr. Miller was necessary because he was armed with a loaded handgun. We needed to take measures to ensure our safety. Well, that fact is very much disputed. Mr. Miller testified that he was slammed into the wall face-first and handcuffed before he had the chance to tell the officers that he was armed. We just assume that for purposes of decision. Yes, Your Honor. What are the other facts that are disputed? I mean, Judge Phillips identified 13 pages of them in her decision. One of the disputed facts is the time of this arrest. It's not undisputed that it only lasted 25 minutes. That is very much in dispute. There is evidence before the Court. There was evidence before Judge Phillips that it lasted up to an hour, 45 minutes by the estimate of Officer Swanson himself, who was probably the person in the best position to estimate the time. Okay. So we assume for purposes of decision that they took him down before he said he had a What else is disputed? I don't believe there is much else pertinent in dispute. It's the length of the detention and whether the officers knew before they seized and manhandled Mr. Miller whether or not he was armed. Now, let's assume for purposes of discussion, taking the facts favorably to Miller, that he had not told them and that they did it before. Why couldn't they do that in a Terry stop? Because the report they had said that the robber was armed and used a gun. They had no information that he was the robber, and a Terry stop, by definition, does not allow that degree of intrusiveness. A Terry stop is supposed to be a brief investigatory stop. Minimal police in a Terry stop could do what a reasonable policeman would think was reasonably necessary for safety. Minimally intrusive measures can be taken in order to preserve the status quo while they are finding out the facts. That does not include doing what they did to Mr. Miller or what the airport police did to Joe Morgan in LAX, taking him, body slamming him, handcuffing him, hauling him off to a private room. That is not a Terry stop anymore. That has ripened into what this circuit defines as an arrest, which is, when would a reasonable person believe he was not free to leave? I think our recent case in the airport, everything they did in the airport was okay. It was just after they got him in the patrol car. I was alluding to the Joe Morgan case, Your Honor. I don't know what the case was. A little different case, I guess. Yes. Joe Morgan, African-American, Hall of Fame baseball player, now a broadcaster with ESPN, in the airport, LAX, a drug courier was interviewed by airport police and asked whether he had a companion. He said, yes, I do have a companion. The officers asked, well, what does he look like? And the drug courier or suspected drug courier answered, he looks like he's black. They went out. They found the one black guy in the gate area. That happened to be Joe Morgan, who was not doing anything illegal. They approached him and asked him for his identification. He said, it's in my luggage. It's over there.  And he started to walk towards his luggage. At that moment, they grabbed him, arms behind his back, slammed him down, picked him up, handcuffed him, and took him off to a private room where they held him for about 30 minutes. I don't know the case. What was our holding? Affirming a JNOV for Joe Morgan, holding that his constitutional rights were violated, upholding a Section 1983 violation, and upholding a damages award in favor of Mr. Morgan. So that case... Was that because of slamming him down when he tried to go to his luggage, or was it because of taking him to the room? It was because what happened to him constituted an arrest without probable cause. This case... When did we say it was an arrest? When he was not free to leave. At the instant that he was seized, and I don't know if you can separate out parts of what happened or that Your Honors did that in the Morgan case, but he was seized, body slammed, and handcuffed within a matter of moments. And the test in this circuit of an arrest is, when would a reasonable person believe himself or herself not free to leave? Your Honors, when a man or woman is thrown face first into a wall and handcuffed, a reasonable person in that situation believes himself or herself not free to leave. That is an arrest under the law of our circuit. That's the Del Vizo case, Judge O'Scanlan authored opinion, and... That means there's no such thing as a Terry stop, because you're not free to leave in a Terry stop. For that matter, you're not free to leave when the cop stops you for speeding. Your Honor... Because that's a Terry stop. A Terry stop is and must be kept minimally intrusive. The officers, for example, a pat down. I mean, that's minimally intrusive. You're patting someone down for weapons. That falls far short of body slamming them, handcuffing them, throwing them into a wall. A sobriety checkpoint. You're asking the motorist to roll down the window. You know, asking them a couple of questions. Have you been drinking tonight? You know, if they don't seem to be a danger to themselves or to others, you're letting them go. Those sorts of stops are the minimally intrusive type of stop that the Supreme Court was talking about in Terry v. Ohio, and that is not what happened here, and it's not what happened to Joe Morgan, and it's not what happened to Mr. Washington. I see my time is waning, Your Honor. I'm glad it waned. Very well, Your Honor. Unless my colleagues have additional questions, I'd like to thank you. Thank you, Your Honors. Counsel? Your Honor, my time is waning, but may I have just a minute to respond to those points? If the Court needs it. If the Court doesn't, that's fine. I don't think we need it. I don't think we need it. Thank you. Thank you very much.
judges: Kleinfeld, Bea, Ikuta